IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

PAUL DONOVAN WALDE,

      Plaintiff,

vs.                                        Case No. 1:21cv123-MW-MAF

JOSHUA MEURER,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, proceeding pro se, initiated this case in July 2021.  ECF No. 1.  Defendant's motion to dismiss, ECF No. 7, was granted in part and denied in part.  ECF No. 27.  Dismissal was "without prejudice," and Plaintiff was granted leave to file an amended complaint.  ECF No. 27.  Plaintiff did so in April 2022, ECF No. 28, by filing an "amended complaint" on notebook paper.  Without requesting permission to again amend his complaint, Plaintiff submitted another document also titled as a "first amended" complaint on May 11, 2022.  ECF No. 29.  That pleading was submitted on the Court's complaint form.  *Id.*

On June 21, 2022, prior to entry of a Court Order addressing the fact that Plaintiff had filed two amended complaints, Defendant filed a motion to dismiss for failure to state a claim, ECF No. 35.  Three weeks later, Defendant also filed a motion for summary judgment, ECF No. 41.  Plaintiff was given notice of his obligation in responding, ECF No. 42, and has filed responses to both motions, ECF Nos. 36 and 54.

This case was reassigned to the undersigned in September 2022. ECF No. 71.  Subsequently the parties advised that mediation was unsuccessful and reached an impasse.  ECF Nos. 78, 79.  In light thereof, both motions are ready for a ruling.  The Court has reviewed both complaints, ECF Nos. 28-29, Defendant's motion to dismiss, ECF No. 35, Plaintiff's response to that motion, ECF No. 36, Defendant's motion for summary judgment, ECF No. 41, and the pro se Plaintiff's response.  ECF No. 54.

**Plaintiff's Amended Complaints**

It would have been beneficial for an Order to clarify which of Plaintiff's pleadings would be deemed to be the operative proceeding.  There is no provision in the Federal Rules of Civil Procedure which permits a Plaintiff to proceed on multiple complaints.  In this case, however, Defendant filed a

Case No. 1:21cv123-MW-MAF

motion to dismiss, ECF No. 35, which addressed both of Plaintiff's

amended complaints, ECF Nos. 28 and 29, together.

**Plaintiff's Allegations**

Plaintiff alleged that the Defendant approached his vehicle on

September 27, 2019, at approximately 9:44 p.m.  ECF No. 28 at 1.  Plaintiff

claimed he was parked on private, commercial property and he identified

the Defendant as a K-9 Officer.  *Id.*  Although not a model of clarity, it

appears that Plaintiff is claiming the Defendant walked his K-9 around the

vehicle and then woke up Plaintiff when he opened the passenger door of

the vehicle.  *Id.* at 1-2.  Plaintiff contends the Defendant lacked probable

cause and committed an "unlawful search" by having a K-9 check the

vehicle without probable cause.  *Id.* at 2.

Plaintiff also alleged that Defendant issued a false report which was

used to obtain a warrant.  *Id.* at 3.  Plaintiff disputes statements made in

the Defendant's report, specifically denying that he told the Defendant he

had stayed "at the business off and on for several months."  *Id.*  Plaintiff

also denied that he told the Defendant he stayed at Grace Market Place.

*Id.*  Plaintiff contends that he could tell by Defendant's body language that

the Defendant "was looking for a reason to arrest Plaintiff."  *Id.* at 4.  At

some later point in time Plaintiff was arrested by the Defendant, but he

advises that the charges were dropped.  *Id.*  He contends he was "falsely

imprisoned" and that Defendant's report contained more falsity than truth.

*Id.* at 5.

Plaintiff's second "amended complaint" identified the Defendant as a

police officer employed by the Gainesville Police Department.  ECF No. 29

at 2, 7.  Plaintiff contends that on September 27, 2019, Defendant Meurer

woke him up by opening the passenger side door of Plaintiff's vehicle.

ECF No. 29 at 7.  Plaintiff indicates his vehicle was parked at the Concrete

Recycling at 930 SW 3rd Street in Gainesville, Florida.  *Id.*  Defendant

Meurer allegedly threatened to arrest Plaintiff if he did not show his ID.  *Id.*

It appears that Plaintiff did so, and asked the Defendant "what crime was

being commited [sic]."  *Id.*  Defendant Meurer answered, trespassing.  *Id.*

There are no allegations which indicate that Plaintiff was arrested during

that interaction.

Plaintiff claims the Defendant came to Plaintiff's job at the Concrete

Recycling facility on October 2, 2019.  *Id.*  Plaintiff said the Defendant was

now "focused only on the sex offence [sic]" and did so only by "running"

Plaintiff's ID.  *Id.*  Plaintiff was then arrested and charged with failure to

change his address.  ECF No. 29 at 7-8.  The charges were subsequently

dropped.  *Id.* at 8.

Plaintiff's amended complaint continues to dispute statements that

were included in Defendant's report.  *Id.*  Plaintiff claims he was

"harassed" by Gainesville police officers after the contact was made with

him on September 27, 2019.  *Id.*  Plaintiff contends his Fourth Amendment

right against unreasonable searches and seizures was violated.  *Id.* at 4.

As relief, Plaintiff requests that he "be taken off sex offender list" and

receive monetary damages.  *Id.* at 9.

**Standard of Review - Motion to Dismiss**

The issue on whether a complaint should be dismissed pursuant to

Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be

granted is whether the plaintiff has alleged enough plausible facts to

support the claim stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127

S.Ct. 1955, 167 L. Ed. 2d 929 (2007).  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S.

662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly,

550 U.S. at 570, 127 S. Ct. 1955).[1]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. at 1965); *see also* Wilborn v. Jones, 761 F. App'x 908, 910 (11th Cir. 2019).  "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 556).  A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility."  Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 557).

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests.  Swierkiewicz v. Sorema, 534 U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

---

[1] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations."  Twombly, 127 S. Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

exceptions.").  Pro se complaints are held to less stringent standards than those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972)).  Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ."  Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (quoted in Twombly, 550 U.S. at 558).

One additional principle bears highlighting: a motion to dismiss does not test the truth of a complaint's factual allegations.  Only factual allegations, not legal conclusions, are "accepted as true," Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949, even when they are "doubtful in fact."  Twombly, 550 U.S. at 555, 127 S. Ct. at 1965.  "Instead, it remains true, after Twombly and Iqbal as before, that 'federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.'"  Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168-69 (1993) (quoted in

<u>Yawn v. Sec'y of Dep't of Corr.</u>, No. 5:13cv228-RH/EMT, 2017 WL

2691423, at *1 (N.D. Fla. June 21, 2017)).

**Motion to Dismiss, ECF No. 35**

Defendant's motion asserts that Plaintiff's first amended complaint,

ECF No. 28, fails to comply with Rule 8(a)'s requirements.  ECF No. 35 at

1-2.  Further, it "contains rambling arguments about multiple arrests, and

takes issue with the police report."  *Id.* at 2.  As for Plaintiff's second filed

amended complaint, ECF No. 29, Defendant asserts that this pleading

corrected some of the Rule 8(a) deficiencies such as jurisdiction and a

more clear request for relief.  ECF No. 35 at 3.  However, Defendant

argues the amended complaint "fails to allege any conduct by Officer

Meurer to deliberately violate Plaintiff's Constitutional rights, and it fails to

identify any conduct by Officer Meurer that was performed pursuant to a

custom, practice, or official policy of the City, or any deliberate municipal

action through which Plaintiff's rights were violated."  *Id.*  Defendant also

contends that Plaintiff's failure to state whether Defendant Meurer is sued

in his individual capacity or official capacity is grounds for dismissal.  ECF

No. 35 at 4.  Even so, Defendant argues that both amended complaints fail

to state a claim against him in either his individual or official capacities.  *Id.*
at 4-9.

**Plaintiff's response**

Plaintiff acknowledges in his response to Defendant's motion to
dismiss that his amended complaint "could have been a lot more stronger
and more facts."  ECF No. 36 at 1.  Plaintiff said he could have presented a
better complaint if he had "received the documents and things requested . .
. ."  *Id.* at 2-3.  Beyond complaining about discovery not provided, Plaintiff
clarified that he was suing the Defendant in his individual capacity.  *Id.* at 3.

**Analysis - Motion to Dismiss**

Plaintiff's amended complaints are not models of clarity.  Indeed, the
first amended complaint presented some facts and legal conclusions, ECF
No. 28, but the pleading did not comply with the Federal Rules of Civil
Procedure.  Plaintiff did not present the facts in short, numbered
paragraphs as required by Rule 10.  He also did not present "grounds for
the court's jurisdiction," include a "short and plain statement of the claim"
showing Plaintiff was entitled to relief, or present a clear "demand for the
relief sought;" thus, it violated Rule 8(a)(2).  That document is insufficient
on its face and the motion to dismiss it should be granted.

As for Plaintiff's second "amended complaint," ECF No. 29, it has been liberally construed as is required for pro se litigants. In general, Plaintiff has alleged claims for an unlawful search and seizure on September 27, 2019. First, Plaintiff alleged that the Defendant "woke" him up "by opening [the] passenger side door" of his vehicle while parked in a business' parking lot. ECF No. 29 at 7. Second, Plaintiff alleged that he was forced to provide his ID to the Defendant. Defendant contends Plaintiff's complaint fails to allege that the Defendant violated Plaintiff's constitutional rights. ECF No. 35 at 3, 7.

As noted by this Court in an earlier Order, "an officer's decision to open someone's car door arguably amounts to a seizure in some circumstances." ECF No. 27 at 2 (citations omitted). Defendant suggests that Plaintiff was asleep in the car and, admittedly, had hearing defects. ECF No. 35 at 7. He further suggests that opening the door "was the only means of getting Plaintiff's attention." *Id.* That may be true, but suggestions for additional facts not alleged by the Plaintiff, is not a basis to dismiss the amended complaint. Plaintiff's amended complaint, ECF No. 29 - insufficient as it may be in some respects - sufficiently asserted a claim for an unlawful seizure against Defendant Meurer.

Case No. 1:21cv123-MW-MAF

Defendant also argued that Plaintiff's amended complaint fails to state a claim because Defendant "had probable cause to approach Plaintiff while asleep in a vehicle parked on private commercial property."  ECF No. 35 at 6.  Further, Defendant points out that "Plaintiff was not taken into custody" at that time, but was arrested several days later.  *Id.* at 6-7.

The second seizure allegation arises from Plaintiff's allegation that the Defendant demanded Plaintiff present his ID.  Plaintiff said he was threatened with arrest if he did not do so.  ECF No. 29 at 7.

In <u>United States v. Drayton</u>, 536 U.S. 194, 122 S. Ct. 2105, 153 L. Ed. 2d 242 (2002), the Supreme Court reiterated that "[l]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen."  <u>Drayton</u>, 536 U.S. at 200, 122 S. Ct. at 2110 (citing <u>Florida v. Royer</u>, 460 U.S. 491, 497, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983); <u>Florida v. Rodriguez</u>, 469 U.S. 1, 5–6, 105 S. Ct. 308, 83 L. Ed. 2d 165 (1984).  In general, even without a "basis for suspecting a particular individual," law enforcement "may pose questions, ask for identification, and request consent to search luggage—provided they do not induce cooperation by coercive means."

Drayton, 536 U.S. at 201, 122 S. Ct. at 2110.  The Court found that "[i]f a reasonable person would feel free to terminate the encounter, then he or she has not been seized."  536 U.S. at 201, 122 S. Ct. at 2110.

Here, Plaintiff's amended complaint alleged that he was threatened with arrest if he did not provide his ID.  ECF No. 29.  In such a case, a reasonable person would not "feel free" to simply leave.  According to Plaintiff's allegations, coercive pressure was used to obtain Plaintiff's compliance.  Accordingly, Plaintiff was seized and it is concluded that the complaint sufficiently alleged a Fourth Amendment claim for an unlawful seizure, even though Plaintiff was not arrested on September 27th.  The Defendant's motion to dismiss should be denied as to this argument.

As for Defendant's argument that Plaintiff's failure to state whether Defendant Meurer is sued in his individual capacity or official capacity is grounds for dismissal, ECF No. 35 at 4, that argument should also be rejected.  The Eleventh Circuit has made it clear that "plaintiffs are not required to designate with specific words in the pleadings that they are bringing a claim against defendants in their individual or official capacities, or both."  Young Apartments, Inc. v. Town of Jupiter, 529 F.3d 1027, 1047 (11th Cir. 2008) (citing Hobbs v. Roberts, 999 F.2d 1526, 1529-30 (11th

Cir. 1993)).  Typically, the "course of proceedings" will clarify "the nature of the liability sought to be imposed."  <u>Young Apartments</u>, 529 F.3d at 1047 (citing <u>Jackson v. Georgia Dep't of Trans.</u>, 16 F.3d 1573, 1575 (11th Cir. 1994).  "Thus, while it is 'clearly preferable' that a plaintiff state explicitly in what capacity defendants are being sued, 'failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice.'"  <u>Moore v. City of Harriman</u>, 272 F.3d 769, 772 (6th Cir. 2001) (quoted in 529 F.3d at 1047); *see also* <u>Harris v. Ostrout</u>, 65 F.3d 912, 915 (11th Cir. 1995) (noting that a pro se complaint is construed "more liberally than ... the complaint of a represented party").  In this case, there are no allegations presented which reveal the Defendant was complying with an official policy, procedure or directive.  Moreover, Plaintiff clarified in his response that he sues the Defendant in his individual capacity.[2]  ECF No. 36 at 3.  This argument does not present a proper basis to dismiss this case and should be rejected.

---

[2] Because of Plaintiff's clarification, Defendant's argument that the complaint fails to state a claim against him in his official capacity, ECF No. 35 at 8, has not been addressed.

**Motion for Summary Judgment**

While the motion to dismiss was still pending, Defendant filed a

motion for summary judgment.[3]  ECF No. 41.  That motion was supported

by Defendant Meurer's affidavit.  ECF No. 41-1.  Plaintiff filed a response to

Defendant's motion, ECF No. 54, and also included his own affidavit, ECF

No. 54-1.  Defendant filed a reply, ECF No. 68.  All have been considered.

**Relevant Rule 56 Evidence**

Defendant Meurer is a law enforcement officer with the City of

Gainesville Police Department.  ECF No. 41-1 at 1.  On September 27.

2019, at 9:44 p.m., he noticed a "vehicle parked on the private property of

Florida Concrete Recycling . . ., tucked away beyond the entrance, in a

manner that appeared suspicious."  *Id.* at 1-2.  The business "was closed at

that time of night," and because of "crime in the area," Defendant

"suspected" that the "occupant of the vehicle might be attempting a

burglary."  *Id.* at 2.  Further, because the "business is enclosed in fencing,"

---

[3] The discovery period began December 27, 2021, ECF No. 9, and was scheduled to conclude on June 13, 2022.  *See* ECF No. 40 at 2.  Notably, Plaintiff filed a "motion to produce" in April 2022, ECF No. 25, but the motion was denied as "premature" because a Report and Recommendation, ECF No. 23, was then pending on Defendant's first motion to dismiss.  ECF No. 26.  It appears that discovery was not fully completed.

the Defendant also "suspected the occupant was also trespassing on property other than a structure, in violation of Fla. Stat. § 810.09."  *Id.*

As Defendant approached, "it appeared that someone was living out of the vehicle."  *Id.* at 2.  Defendant tried to make verbal contact, but Plaintiff was "non-responsive."  *Id.*  "After multiple attempts, including knocking on the passenger's side window," Defendant was able to get Plaintiff's attention and ask him for identification.  *Id.* at 2.  "Plaintiff refused to identify himself despite repeated requests," but said he worked at the property and had permission to be there.  *Id.*  Defendant "explained that [he] needed to verify Plaintiff's identity to ensure he was not trespassing," and Plaintiff "eventually complied," providing his driver's license and a phone number for his employer.  *Id.*  Plaintiff's driver's license indicated "he resided at Grace Marketplace, a homeless shelter."  *Id.*

Defendant called in Plaintiff's driver's license and was advised that Plaintiff "had an outstanding arrest warrant from Michigan for failure to register as a sex offender."  *Id.* at 2-3.  Plaintiff acknowledged the warrant, but said the authorities "would not or could not extradite him."  *Id.* at 3.  Plaintiff argued "he was not in violation of Florida's sex offender registration law because he is allowed 48 hours to register a new address."  *Id.*

Case No. 1:21cv123-MW-MAF

Defendant contacted the person Plaintiff identified as his employer, who "advised that he was unaware that Plaintiff was sleeping on the property but gave permission for him to remain for the night."  *Id.* at 3. Defendant relayed that information to Plaintiff and also urged him to "do the right thing" and comply with the sex offender registration requirements. ECF No. 41-1 at 3.  "Plaintiff smugly replied that he would never be caught, citing multiple prior arrests and charges that he beat."  *Id.*  The encounter ended and Defendant left.  *Id.*

On October 1, 2019, Defendant confirmed that Plaintiff was no longer residing at Grace Marketplace (the shelter) since June 6, 2019, which was four months prior.  *Id.*  Defendant said that Plaintiff is required to register with FDLE, and he last provided his address on August 19, 2019, listing Grace Marketplace as his residence.  *Id.* at 3-4.  Defendant determined that Plaintiff had not "registered with a current residence or updated his driver's license," and failed to report his change of residence within 48 hours as required.  *Id.* at 4.  Defendant "developed probable cause to arrest Plaintiff for violation of the Florida sex offender registration law" and returned to Florida Concrete Recycling on October 2, 2019, and "placed

Plaintiff under arrest for violation of F.S. 943.0435 - Failure to Register as a Sex Offender." *Id.*

Plaintiff states in his affidavit that he had worked at Florida Concrete Recycling for approximately one year prior to the encounter with Defendant Meurer. ECF No. 54-1 at 1. Plaintiff said he decided "to camp out" in the parking lot at his work "to get maximum rest" before working the next day. *Id.* at 1-2. He said he "parked the same way [he] did every morning before work." *Id.* at 2. Plaintiff said he heard a "tap" on the passenger side window, and looked up to see an "extremely bright light." *Id.* Plaintiff said his passenger side door was opened by the police officer, and Plaintiff realized his driver's door was locked, but the passenger door was not. *Id.* at 2-3.

Plaintiff admits that he wears "hearing aids to assist in hearing." *Id.* at 3. He disputes Defendant's contention that he tried multiple times to make contact. *Id.* Plaintiff said he "would [have] easily heard him tap on drivers window" and is "a lite sleeper." *Id.*

Plaintiff also said that Defendant "wanted to see [his] ID," but Plaintiff "was not going to just hand over [his] ID." *Id.* Plaintiff said he "could tell" the Defendant did not "like that one bit" and threatened "to arrest [Plaintiff]

if [he] did not show ID." *Id.* Plaintiff asked what crime he had committed, and Defendant "paused as he had to think of something, then said trespass." *Id.* at 4. Plaintiff believed Defendant "just made that up" and "just wanted to know who [he] was" since he was "not investigating a call in or a crime." *Id.* Plaintiff handed the Defendant his ID and asked the Defendant if he wanted his supervisor's name and number. ECF No. 54-1 at 4.

Plaintiff admits knowing there was a 13-year old warrant for him "out of Michican." ECF No. 54-1 at 5. He contends it is "non-extradition." *Id.* Plaintiff disputes Defendant's contention that he was in violation of Florida sex offender registration law. *Id.* He says that he registers "at the Alachua County jail monthly." *Id.* at 6. Plaintiff was arrested on October 2, 2019, at his "work." *Id.* at 7. The charges were dismissed on November 27, 2019. *Id.*

**Analysis - Summary Judgment Motion**

As an initial matter, Defendant contends in his reply that "this Court has already dismissed Plaintiff's false arrest claims." ECF No. 68 at 2. Further he asserts that "this Court previously resolved any legal challenge to the propriety of Officer Meurer asking for Plaintiff's identification in

Officer Meurer's favor."  *Id.*  While the Defendant's first motion to dismiss,

ECF No. 7, was granted in part, the dismissal was "without prejudice" and

Plaintiff was permitted to file an amended complaint.  ECF No. 27.  This

argument is rejected.

The Fourth Amendment, made applicable to the States by the

Fourteenth Amendment, Ker v. California, 374 U.S. 23, 30, 83 S. Ct. 1623,

1628, 10 L. Ed. 2d 726 (1963), protects the "right of the people to be

secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures."  U.S. CONST. AMEND IV.  "Not all police–citizen

encounters are seizures."  United States v. Mestre, 362 F. Supp. 3d 1175,

1179 (M.D. Ala. 2019).  There are three general categories of

"police-citizen encounters" for purposes of the Fourth Amendment: "(1)

police-citizen exchanges involving no coercion or detention; (2) brief

seizures or investigatory detentions; and (3) full-scale arrests."  United

States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989) (cited in United

States v. Perez, 443 F.3d 772, 777 (11th Cir. 2006)).  The first question to

be answered is which category of encounter occurred between Plaintiff

Walde and Defendant Muerer.

"[P]olice questioning, by itself, is unlikely to result in a Fourth Amendment violation."  INS v. Delgado, 466 U.S. 210, 216, 104 S. Ct. 1758, 80 L. Ed. 2d 247 (1984) (quoted in Mestre, 362 F. Supp. 3d at 1179). When communication is voluntary and the encounter "does not involve coercion or detention," the Fourth Amendment is not implicated.  United States v. Perez, 443 F.3d 772, 777 (11th Cir. 2006).  Merely approaching a person in a parked car is not a seizure.  United States v. Baker, 290 F.3d 1276, 1277 (11th Cir. 2002); United States v. Thompson, 712 F.2d 1356, 1358 (1983); Miller v. Harget, 458 F.3d 1251, 1257 (11th Cir. 2006). "Officers are free, without any level of suspicion, to approach citizens on the street or in a public place and ask them questions, request proof of identification, and a consent to search."  Miller, 458 F.3d at 1257.

To determine whether an encounter is non-coercive, courts consider "whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police."  United States v. De La Rosa, 922 F.2d 675, 678 (11th Cir. 1991) (quoted in Perez, 443 F.3d at 778).  All

such factors help determine whether a "reasonable person would feel free to leave." Perez, 443 F.3d at 778. "The ultimate inquiry remains whether a person's freedom of movement was restrained by physical force or by submission to a show of authority." United States v. Jordan, 635 F.3d 1181, 1186 (11th Cir. 2011) (quoted in Mestre, 362 F. Supp. 3d at 1179).

Here, Defendant's affidavit indicates he began questioning the Plaintiff without inquiring whether Plaintiff was willing to speak with him. Defendant's affidavit states that although Plaintiff did not initially provide his identification when first requested, he "eventually complied." Defendant took Plaintiff's driver's license and called it in to dispatch, but there is no evidence to show how long Defendant retained the driver's license. There is also no evidence that Defendant parked his patrol car in such a way as to block Plaintiff's vehicle. No evidence was presented to clarify the length of the questioning, but only the Defendant was present; thus, there was no show of force by law enforcement. Additionally, it does not appear that the Defendant displayed his weapon or physically touched the Plaintiff. On the other hand, the evidence suggests that the Defendant spoke to Plaintiff while holding the passenger side door of the vehicle open. Moreover,

accordingly to Plaintiff, the Defendant threatened to arrest him if he did not show his identification.  Defendant did not specifically deny that assertion.

If Plaintiff's version of events is accepted as true, the threat of arrest - coupled with holding the passenger door of the vehicle open such that the vehicle could not readily leave - would make a reasonable person feel they were not free to leave.  United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980) (stating "[a] person is seized under the Fourth Amendment 'only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave'") (quoted in Mestre, 362 F. Supp. 3d at 1179). Plaintiff was seized by the Defendant.

That conclusion is in line with another case involving a "police encounter in the parking lot of a Dothan Walmart."  Mestre, 362 F. Supp. 3d at 1178 (case involving officer who opened a car door "to ask questions without first asking whether [the occupants] were willing to speak with him").  Relying on a District of Columbia Circuit case, United States v. Brown, 334 F.3d 1161, 1164 (D.C. Cir. 2003),[4] the Mestre court concluded

_____

[4]     In Brown, the officer saw a vehicle parked where gunshots had been reported and decided to investigate.  Id. at 1163. He approached the vehicle and knocked on the window.  Id.  When he received no response,

that the act of opening the door, and standing "before the open car door" while asking questions, was not a consensual encounter.  <u>Mestre</u>, 362 F. Supp. 3d at 1180.  The court held that there was "a show of authority that would have led a reasonable person to believe he was not free to end the conversation and leave."  362 F. Supp. 3d at 1180.  Additional support is found in <u>United States v. Thompson</u>, 712 F.2d 1356 (11th Cir. 1983).  There, the Eleventh Circuit concluded that where an officer retains a suspect's driver's license, an "encounter mature[s] into an investigative stop protected by the Fourth Amendment" because without a driver's license, a person is "effectively immobilized."  <u>Thompson</u>, 712 F.2d at 1359.

In this case, viewing the evidence in the light most favorable to Plaintiff as the non-moving party, he has shown that his encounter with the Defendant was not voluntary, but was coercive.  Thus, Plaintiff was "seized" by the Defendant and Defendant's argument that Plaintiff "fails to identify a Constitution right that was allegedly violated," ECF No. 41 at 12,

---

he cracked the door open and saw the inculpatory evidence.  *Id.*  The court assumed this was a Fourth Amendment stop and search and went on to analyze whether it was based on reasonable suspicion.  *Id.* at 1164.

<u>Mestre</u>, 362 F. Supp. 3d at 1180 (explaining <u>Brown</u>, 334 F.3d at 1164).

should be rejected.  Although Defendant paints this as "a minor Fourth Amendment issue," ECF No. 41 at 12, Plaintiff has demonstrated a triable Fourth Amendment seizure claim.

Even so, the fact that Plaintiff was seized and the Fourth Amendment was implicated does not end the inquiry.  The Court must also determine whether or not the Defendant had "a reasonable, articulable suspicion[5] that criminal activity [was] afoot."  Terry, 392 U.S. at 30, 88 S.Ct. 1868. Defendant has not addressed this issue.  Defendant has not provided any argument as to his reasonable suspicion that would justify the seizure.

A law enforcement "officer must articulate a particularized and objective basis for suspecting the particular person stopped of criminal activity,' United States v. Cortez, 449 U.S. 411, 417-18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981), not merely an 'inchoate and unparticularized suspicion or 'hunch' of criminal activity.'"  Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (quoting Terry, 392 U.S. at 27,

---

[5]  "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop."  United States v. Lindsey, 482 F.3d 1285, 1290 (11th Cir. 2007) (quoted in United States v. Baker, No. 2:19-CR-343-RAH-JTA, 2020 WL 4007131, at *4 (M.D. Ala. Mar. 16, 2020), report and recommendation adopted, No. 2:19-CR-343-RAH, 2020 WL 2039205 (M.D. Ala. Apr. 28, 2020)).

88 S. Ct. 1868) (quoted in Mestre, 362 F. Supp. 3d at 1181).  Although

Defendant did not address this issue, the facts presented demonstrate the

following: (1) Plaintiff's vehicle was in a business parking lot late at night,

after business hours; (2) the vehicle was "tucked away beyond the

entrance, in a manner that appeared suspicious;" (3) there was crime in the

area; (4) it appeared a person was living out of the vehicle; and (5) Plaintiff

was discovered asleep in the vehicle.  Those facts do not demonstrate a

"reasonable suspicion" to justify Plaintiff's seizure.  First, Defendant stated

in his affidavit that the manner in which Plaintiff's vehicle was parked -

"tucked away beyond the entrance" - appeared "suspicious," and he

"suspected the occupant of the vehicle might be attempting a burglary."

ECF No. 41-1 at 2.  However, no explanation was provided to show a

connection between the way the vehicle was parked and a burglary,

especially since it appears the vehicle was not near the entrance, a

location more reasonable for removing property.  Second, because the

vehicle was parked at a closed business, Defendant said he also

suspected Plaintiff of "trespassing on property other than a structure."  ECF

No. 41-1 at 2.  Again, no argument was made to show the elements of that crime and facts which would raise Defendant's suspicion.[6]

Plaintiff has presented a Fourth Amendment claim because he has shown he was "seized."  Defendant has not shown that the seizure was permissible under the Fourth Amendment.  Summary judgment should be denied as to this claim.

Another claim evident from Plaintiff's amended complaint, ECF No. 29, concerns whether he was falsely arrested on October 2, 2019.  Defendant argued that he had probable cause to arrest Plaintiff.

"The existence of probable cause at the time of the arrest . . . constitutes an absolute bar to a section 1983 action for false arrest."  Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004) (quoted in

---

[6] In a recent Eleventh Circuit case, the court stated that "[a] person commits the Florida misdemeanor offense of trespass on property other than a structure or conveyance when, 'without being authorized, licensed, or invited,' he 'willfully enters upon or remains in any property other than a structure or conveyance: (1) As as [sic] to which which [sic] notice against entering or remaining is given, either by actual communication to the offender or by posting, fencing, or cultivation as described in s. 810.011.'"  Watkins v. Broward Sheriff Off., 824 F. App'x 865, 868 (11th Cir. 2020) (quoting Fla. Stat. § 810.09(1)(a), (2)(a) (2014)).  In that case, the court found that the officer had probable cause to believe Watkins "was actively committing the offense of trespass on property other than a structure or conveyance" because the property manager "complained to the police that Watkins refused to leave the property after being asked to do so, and she knew that he remained on the property when she arrived."  Watkins, 824 F. App'x in 868.  In this case, there is no evidence of a complaint or call to police; rather, Defendant simply observed the vehicle.

Davis v. City of Apopka, 734 F. App'x 616, 621 (11th Cir. 2018)).

"Probable cause to arrest exists 'when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotation marks omitted) (quoted in Davis, 734 F. App'x at 621). "[F]or probable cause to exist, 'an arrest must be objectively reasonable based on the totality of the circumstances.'" 734 F. App'x at 621 (quotation omitted).

In this case, Plaintiff provided the Defendant with his driver's license on September 27, 2019.  The license listed his residence at Grace Marketplace, a homeless shelter.  On October 1, 2019, Defendant learned that Plaintiff had not been residing at Grace Marketplace since June 6, 2019.  Plaintiff's most recent registration with FDLE was on August 19, 2019, *two months later,* and Plaintiff listed Grace Marketplace as his residence.  Therefore, Defendant had probable cause to arrest Plaintiff for failing to report his change of residence within 48 hours as required by

Florida law.  *See* Fla. Stat. § 943.0435.  In light thereof, summary judgment should be granted in Defendant's favor on Plaintiff's false arrest claim.

## **RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss, ECF No. 35, be **GRANTED in part and DENIED in part**.  Plaintiff's first amended complaint, ECF No. 28, should be **DISMISSED** for failure to state a claim upon which relief may be granted, but Plaintiff's second filed "amended complaint," ECF No. 29, should proceed against the Defendant in his individual capacity only.  It is further **RECOMMENDED** that the motion for summary judgment, ECF No. 41, be **GRANTED** as to Plaintiff's false arrest claim, but otherwise be **DENIED** as to the Fourth Amendment seizure claim.  Finally, it is **RECOMMENDED** that this case be **REMANDED** for further proceedings, including providing additional discovery, prior to scheduling a trial of this matter.

**IN CHAMBERS** at Tallahassee, Florida, on February 2, 2023.

S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

Case No. 1:21cv123-MW-MAF

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**